**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO:**<br>Alford, No. 1:07-cv-01963-ML-LDA<br>Edgar, No. 1:07-cv-01849-ML-LDA<br>McNeir, No. 1:07-cv-01863-ML-LDA<br>Tompkins, No. 1:07-cv-00191-ML-LDA<br>Jones, No. 1:07-cv-00190-ML-LDA<br>Collins, No. 1:07-cv-01912-ML-LDA<br>Swallow, No. 1:07-cv-00426-ML-LDA<br>Hyland, No. 1:07-cv-01851-ML-LDA<br>Smith, No. 1:07-cv-01937-ML-LDA<br>Wilkins, No. 1:07-cv-01870-ML-LDA | § | **Chief Judge Mary M. Lisi** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION SEEKING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS**

With this Motion, Defendants C.R. Bard, Inc. ("Bard") and Davol Inc. ("Davol") ask the Court to recognize Bard and Davol's right to engage in substantive *ex parte* contacts with plaintiffs' past and/or present treating physicians in the eight states where the plaintiffs live in the ten cases selected for ADR (Nebraska, New York, North Carolina, Louisiana, Missouri, Texas, West Virginia, and Utah). As shown below, federal procedural rules govern, and those rules permit such contacts where neither federal nor state substantive law precludes them. Because federal law does not prohibit *ex parte* contacts, and because the law of each of these states either recognizes no physician-patient privilege or recognizes that any such privilege is waived by a plaintiff placing his or her condition at issue by filing a personal injury lawsuit, the Court should permit *ex parte* conversations with physicians of plaintiffs residing in those states. Defendants seek *ex parte* communications with plaintiffs' doctors because this informal discovery mechanism will expedite the formal discovery process and reduce the overall time and

expense of this litigation. These efficiencies are all the more imperative now that plaintiffs' counsel has selected ten cases for mediation by June 2008.[1] Furthermore, due process also requires that Defendants be given equal access to these potentially important discovery and trial witnesses. Plaintiffs and their counsel already enjoy unfettered access, but they oppose this motion and would wrongly reserve to themselves the right to and benefits of informal, *ex parte* conversations while denying the same to the Defendants.

In sum, a prohibition on *ex parte* communications is neither warranted nor fair. Accordingly, Defendants respectfully request that the Court grant this motion and permit Defendants to meet with and question *ex parte* plaintiffs' doctors concerning the facts and circumstances giving rise to the claims in this litigation.

## ARGUMENT

### I. FEDERAL PROCEDURAL LAW ALLOWS *EX PARTE* CONTACTS WHERE, AS HERE, THERE IS NO APPLICABLE PRIVILEGE OR OTHER SUBSTANTIVE PROHIBITION ON SUCH CONTACTS.

Federal law – rather than state law – controls the procedural aspects of the discovery process in this litigation. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (in diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts). This is so because "when the issue before the court is not *what* may be discovered, but *how* that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law." *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002); *see Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("the issue of how discovery

[1] At this point, Defendants have virtually no information about the ten plaintiffs selected for mediation. As set out below, information gained through *ex parte* contacts with plaintiff's physicians and surgeons will permit formal discovery to progress within the timeframe contemplated by the Court.

may be conducted is one of federal procedure"); *Evertson v. Dalkon Shield Claimants Trust*, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) ("The method for discovering unprivileged material – whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews – is entirely a matter of procedure governed by the Federal Rules of Civil Procedure.").

The Federal Rules of Civil Procedure do not prohibit *ex parte* contacts with plaintiffs' physicians; therefore contact should be permitted unless there is some substantive state or federal prohibition against such contacts.[2] And there is no such prohibition. Federal substantive law does not present an obstacle to *ex parte* contacts. Likewise, state law does not bar *ex parte* contacts with plaintiffs' medical providers in the eight states implicated by this motion because, under the law of those states, either no privilege doctor-patient privilege exists or the plaintiffs have implicitly waived any such privilege by filing suit against Defendants, thus placing their medical care and condition at issue in this litigation.

**A. Federal law does not preclude *ex parte* contacts with treating physicians.**

There is no federal physician-patient privilege that would preclude the *ex parte* contact sought here. *See Hancock v. Dobson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (refusing to recognize a federal common law physician-patient privilege). Likewise, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, provides no

---

[2] *See, e.g., Weiss v. Astellas Pharma, U.S., Inc.*, 2007 WL 2137782, at *3 (E.D. Ky. July 23, 2007) ("Given that plaintiff has no substantive state law privilege, the federal court must now turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians."); *Patton v. Novartis Consumer Health, Inc*., No. 4:02-CV-0047, 2005 WL 1799509, at *2-3 (S.D. Ind. July 25, 2005) (where plaintiff waived any physician-patient privilege that might apply under state law by placing medical condition at issue, informal witness interviews were permissible under federal procedural law, which does not prohibit such *ex parte* contacts); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) (although state law governs existence and waiver of privilege, "Federal Rules of Civil Procedure govern the discovery conducted in this case," and "[n]othing in those Rules prohibits informal interviews").

impediment to *ex parte* contacts. HIPAA was enacted "to improve . . . the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." § 261, 110 Stat. at 2021. In order to ensure the confidentiality of the transmitted health information, the United States Department of Health and Human Services promulgated concomitant privacy regulations, including the "Privacy Rule." 67 Fed. Reg. 53182 (Aug. 14, 2002). The Privacy Rule expressly provides that a physician may disclose a patient's medical information once the patient executes a valid authorization as prescribed in the Rule. 45 C.F.R. §§ 164.502(a)(1)(iv), 164.508 (2007). Courts have held that once a patient-turned-plaintiff executes such an authorization, *ex parte* interviews between the plaintiff's treaters and defense counsel are permissible. *See Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *4-5 (E.D. Mich. Nov. 10, 2005) (HIPAA permits *ex parte* interviews when they are conducted in compliance with HIPAA regulations based on the principle of fundamental fairness to investigate the health condition of the plaintiff without interference of and without disclosing work product to plaintiff's counsel); *cf. Law v. Zuckerman*, 307 F. Supp. 2d 705 (D. Md.) (informal witness interviews conducted consistent with HIPAA's disclosure requirements are permissible). HIPAA also does not prevent *ex parte* communications where a qualified protective order is in place. *See Croskey*, 2005 WL 4704767, at *4-5. Here, Defendants are seeking disclosure of information pertinent only to the medical conditions plaintiffs placed at issue; plaintiffs easily can and should execute a HIPAA-compliant authorization that will permit such disclosures; and a protective order is now in place for this litigation. Discovery via informal *ex parte* interviews is therefore permissible under federal law.

### B. In the eight states implicated by this motion, state law does not preclude *ex parte* contacts with plaintiffs' treating physicians.

Applicable state law does not prevent *ex parte* contacts by virtue of any doctor-patient privilege. Each of the eight states of residence recognizes some form of physician-patient privilege, but deems that privilege waived by the initiation of litigation that puts the plaintiffs' health in issue. *See Vredeveld v. Clark*, 504 N.W.2d 292, 300 (Neb. 1993) (**Nebraska**) ("[F]iling a personal injury claim waives the physician-patient privilege as to all the information concerning the health and medical history relevant to the matters which plaintiff has put at issue"); *Dillenbeck v. Hess*, 536 N.E.2d 1126, 1135 (N.Y. 1989) (**New York**) ("a plaintiff waives the physician-patient privilege by commencing an action which puts plaintiff's own physical condition in issue"); *Jones v. Asheville Radiological Group*, 500 S.E.2d 740, 746 (**North Carolina**) (N.C. App. 1998) ("Here, when plaintiff filed the underlying action, she directly put her medical condition at the time of the mammogram procedure at issue. Thereafter, plaintiff's conduct during the course of the underlying action clearly establishes a waiver of her physician-patient privilege."); *State v. Berry*, 324 So. 2d 822, 827 (La. 1976) (**Louisiana**) ("by bringing the action, [a plaintiff] waives his right to claim the privilege as to any physicians who have prescribed for or treated him for such injuries"); *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo. 1999) (**Missouri**) ("most common" waiver of physician-patient privilege "involve[s] plaintiffs who voluntarily place their medical condition in issue by . . . alleging that they suffered physical or mental injuries"); Tex. R. Evid. 509(e)(4) (**Texas**) ("Exceptions to confidentiality or privilege in administrative proceedings or in civil proceedings in court exist ... as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as part of the party's claim or defense."); Utah Code § 78-24-8(4) (**Utah**) ("A physician or surgeon cannot, without the

consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. However, this privilege shall be deemed to be waived by the patient in an action in which the patient places his medical condition at issue as an element or factor of his claim or defense. Under those circumstances, a physician or surgeon who has prescribed for or treated that patient for the medical condition at issue may provide information, interviews, reports, records, statements, memoranda, or other data relating to the patient's medical condition and treatment which are placed at issue."); *Keplinger v. Virginia Electr. & Power Co.*, 537 S.E.2d 632, 644 (**West Virginia**) (W. Va. 2000) ("Although there is no physician-patient privilege in West Virginia, our Legislature has nevertheless acknowledged the special confidential nature of certain medical records."); *id*. ("While we acknowledge that a person who has filed a civil action that places a medical condition at issue has impliedly consented to the release of medical information, this implied consent involves *only* medical information *related to the condition placed at issue*." (emphasis in original)).

In states where the applicable privilege is waived by the initiation of litigation, there is no state-law-specific basis to prohibit *ex parte* contacts, and thus under federal procedural law such contacts should be permitted. *See Weiss*, 2007 WL 2137782, at *5 ("[A]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him." (quotation marks and citations omitted)).

## II. *EX PARTE* CONTACTS SERVE THE INTERESTS OF EFFICIENT DISCOVERY AND PRESERVE DEFENDANTS' DUE PROCESS RIGHTS.

### A. Allowing Defendants access to plaintiffs' treating physicians will speed the discovery process.

Plaintiffs' health care providers likely will offer testimony on, *inter alia*, whether each plaintiff received a Composix® Kugel® Patch and for what reason; whether any warnings were

provided to the plaintiff and what they were; the extent and nature of plaintiffs' surgical history and the ways in which that history may be responsible for their present claimed injuries; whether plaintiffs have a past or present physical injury; the prognosis and treatment for any such injury; and damages. Allowing Defendants to engage in substantive *ex parte* conversations with plaintiffs' health care providers regarding plaintiffs' relevant medical information permits Defendants to determine which health care providers should be deposed, and it would facilitate a more streamlined deposition in cases where the providers' deposition is required. In addition, *ex parte* contacts after deposition permit Defendants to obtain updates on a plaintiff's condition, treatment, and the provider's opinions – all without noticing follow-on depositions except where absolutely necessary. These efficiencies inure to the benefit of Defendants, the plaintiffs, and the Court alike. *See*, *e.g.*, *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995) (noting that limitations on *ex parte* contacts "hinder[] settlement negotiations and trial preparation by restricting the gathering of relevant evidence in an informal fashion, thus requiring the more expensive and time-consuming procedures of a formal deposition"); *Eve v. Sandoz Pharms. Corp*., No. IP 98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) (permitting *ex parte* communications with treating physicians because such communications reduce costs of trial preparation).

Indeed, the ability of counsel – including defense counsel – to conduct private witness interviews in federal court is a "time-honored and decision-honored" practice. *IBM v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975) (counsel for all parties may interview the adverse party's witnesses without the presence of opposing counsel); *see Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("the Federal Rules of Civil Procedure . . . have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of

a witness who is willing to speak"). Private witness interviews protected from participation by opposing counsel have long been favored by courts to ensure that attorneys can represent their clients effectively within the adversarial process and gather information freely in preparing their cases for trial without revealing work product information. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 511 (1947) (work product of lawyers consists, *inter alia*, of witness interviews and exposing such work product to opposing counsel's scrutiny would lead to "the interests of the clients and the cause of justice . . . be[ing] poorly served"); *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935-36 (6th Cir. 1980) (attorney work product privilege creates zone of privacy in which attorney can investigate and prepare case; identity of whom counsel chose to interview and memoranda of interviews protected work product); *IBM*, 526 F.2d at 42, 44 (issuing writ of mandamus to permit defendant in civil suit to conduct private witness interviews; order barring such interviews "unduly infringed upon counsels' ability to prepare their case for trial"). "Treating physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties ... as would be the case with any other ordinary fact witness." *Weis*, 2007 WL 2137782, at *5 (quoting *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986)). For these reasons and others, "[n]umerous federal courts have held that a defendant is entitled to conduct *ex parte* interviews with a plaintiff's treating physicians." *Weiss*, 2007 WL 2137782, at *4 (citing cases); *see also Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (allowing *ex parte* contacts under federal procedural rules).

**B. *Ex parte* contacts are essential to preserve Defendants' due process rights.**

*Ex parte* contacts place Defendants on an equal playing field with plaintiffs and their counsel, who currently have unfettered access to plaintiffs' medical providers. Constitutional

due process rights require fundamental fairness – including a level playing field with respect to access to important witnesses. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S. 18, 26, 33 (1981). No party has a proprietary right to any witness or the evidence that witness possesses. *Patton*, 2005 WL 1799509, at *4; *King v. Ahrens*, 798 F. Supp. 1371, 1373-74 (W.D. Ark. 1992). Thus, a party is deprived of due process when a law (or other state action) gives the opposing party favored access to evidence that results in an uneven "playing field." *Cf. United States v. White*, 454 F.2d 435, 438-39 (7th Cir. 1971) ("witnesses . . . are the property of neither the prosecution nor the defense;" defendants must have an equal right and opportunity to interview witnesses as prosecutors); *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (same). Given the importance of the information that can be provided by plaintiffs' treating physicians, Defendants will be deprived of their due process rights if the Court were to sanction plaintiffs' continued and exclusive access to these key witnesses.[3]

In this era of litigation and HIPAA, because physicians are unlikely to be aware of their right to speak to Defendants *ex parte* or afraid to exercise that right, Defendants move that the Plaintiffs be required to execute medical releases identical to those already agreed to by the parties, but with the addition of language that makes clear that they may speak freely to the Defendants, and that the Court further order that neither plaintiffs' counsel nor plaintiffs shall communicate otherwise to the physicians in these eight states. Proposed language for the additional paragraph is attached as Att. A.

---

[3] Should the Court choose to deny Defendant's request for *ex parte* contacts, Defendants respectfully request that the Court issue an order that prevents plaintiffs from engaging in *ex parte* contacts as well.

## CONCLUSION

Because no federal or state privilege bars *ex parte* contacts, and because *ex parte* communications with plaintiffs' treating physicians are necessary both to protect Defendants' due process rights and to increase the efficiency of discovery in this litigation, this Court should enter an order compelling the ten plaintiffs whose cases plaintiffs have selected for expedited ADR treatment to sign authorizations permitting them.

Dated: December 27, 2007

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2007, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION SEEKING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via facsimile and electronic mail*

s/ Kirby T. Griffis

# Attachment A

**Proposed Medical Release Information Regarding Direct Contacts**

This authorization is not limited in any way to the provision of paper or other records, but specifically authorizes the medical provider to speak to attorneys for the Defendants concerning your care and treatment of the patient and concerning the records in your care and treatment to the extent that they involve the patient's hernia repair surgery, any prior or subsequent treatment related to or arising from the hernia repair surgery, any prior or subsequent exploratory, explantation, or other surgery or procedures involving the groin or abdomen, and any prior or subsequent treatment related to the patient's claims of pain and disability allegedly arising from the hernia repair surgery. You have the legal right to speak to attorneys for the Defendants outside the presence of me or my lawyers. Although you are permitted to and authorized to speak voluntarily to attorneys for the defendants as described above, you are not required to do so and may refuse, in which case those attorneys may only speak to you concerning my care and treatment through a deposition or trial subpoena for testimony.